# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No.  06-2812

———————

Victoria Shaffer,                                        *
                                                         *
        Plaintiff-Appellant,                     *
                                                         *  Appeal from the United States
    v.                                                   *  District Court for the
                                                         *  Southern District of Iowa.
John E. Potter, Postmaster                               *
General of the United States,                            *
                                                         *
        Defendant-Appellee.                      *

———————

Submitted:  April 9, 2007
Filed:  August 22, 2007

———————

Before MURPHY, BRIGHT, and BENTON, Circuit Judges.

———————

BENTON, Circuit Judge.

Victoria L. Shaffer sued John E. Potter, Postmaster General of the United States, for gender discrimination in violation of 42 U.S.C. § 2000e-16.  The district court[1] granted summary judgment to the Postmaster General.  Shaffer appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

---

[1] The Honorable Ronald E. Longstaff, United States District Judge for the Western District of Iowa.

Shaffer was a letter carrier for the United States Postal Service. In the summer of 1999, she and Keith E. Burnham, another letter carrier, began a romantic relationship. On March 4, 2000, Shaffer complained to Postal Inspector Troy Raper, reporting that Burnham's wife and son were in the employee parking lot, which had a "No Trespassing" sign. Once Raper learned of the romantic relationship, he did not investigate further, treating the incident as a private matter. He did tell Shaffer "if she chose to have an affair with Keith Burnham and that upset Keith Burnham's wife, allowing her personal problems to come into the workplace, could potentially have an impact on her job in the future and she needed to stop that." Raper did not talk with Burnham about the incident.

On June 29, 2001 – over a year later – Burnham called the Postal Inspection Service while on his route, reporting that Shaffer had threatened him. He stated:

> After a 1 ½ year relationship things got ugly today on my route. Vicky [Shaffer] parked behind my truck at 4th and Clark. When I got out of my truck and turned around, she grabbed my shirt, kissed me, and said, "why did you do it?"[2] I replied, "I don't know." She said, "I don't understand." I said, "I don't either," and turned around and walked away. She got in her car and left. A few minutes later she pulled up to the curb, rolled down the window and said, "Next time I'll put a bullet in your head." She left and shortly after left a message on my voice mail. She said, "If I ever stop crying long enough to come back, you better run like a mother f _ _ _ er!" I then called the inspectors.

Inspector Raper responded to the call, came to the scene, and interviewed Burnham. Other than responding and interviewing Burnham, Raper did not further investigate the scene or search for a gun.

---

[2] Both briefs identify the "it" as Burnham's cancelling their vacation together.

Burnham wrote and signed a statement that day. Raper and another inspector, listened to the voicemail message, transcribed it, and concluded it confirmed Burnham's recitation. Raper tried to re-record the message onto his office telephone, but copied only part of it.[3]

The next day, Raper interviewed Shaffer. She denied threatening Burnham. She said that after confronting him, she told him never to see her again. She then called and according to her, left this message: "I can't stop crying, why do you always run away – mother f _ _ _ er."

After consulting with a county attorney, Raper swore out a criminal complaint, obtained a court warrant, and arrested Shaffer on June 30. On July 2, Shaffer was placed on unpaid leave pending an investigation. Shaffer's supervisor interviewed Burnham and her, and reviewed Raper's reports as well as reports and statements given to the union. The supervisor determined that Burnham was more credible. On August 1, the supervisor terminated Shaffer for improper conduct. The termination was upheld after a union-invoked arbitration. (After the decision to terminate Shaffer and after arraignment, the criminal charges were dropped at Burnham's request.)

Shaffer filed a complaint with the EEOC alleging that her arrest, suspension, and discharge were unlawful employment discrimination. The administrative law judge found no unlawful discrimination. Shaffer appeals the district court's summary judgment, claiming that Raper's statements and conduct during the investigation are evidence of illegal employment discrimination, resulting in the suspension and termination.

This court reviews a grant of summary judgment de novo, and affirms if the evidence viewed in the light most favorable to the non-moving party demonstrates no

---

[3] A month later, Raper learned the partial re-recording had been deleted; by then Burnham had deleted the original message.

genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. ***Baucom v. Holiday Cos., Inc.*** 428 F.3d 764, 766 (8th Cir. 2005). To avoid summary judgment, Shaffer must "make a showing sufficient to establish the existence of an element essential" to her case, on which she bears the burden of proof at trial. ***Id.*** In this case, she must present evidence "sufficient for a reasonable fact finder to infer that the employer's decision was motivated by discriminatory animus." ***Fair v. Norris***, 480 F.3d 865, 869 (8th Cir. 2007). Shaffer may establish unlawful employment discrimination by either direct or indirect evidence. *See* ***Kratzer v. Rockwell Collins, Inc.***, 398 F.3d 1040, 1045 (8th Cir. 2005).

I.

Shaffer contends the district court erred in granting summary judgment because she presented direct evidence of discrimination. Direct evidence is evidence that establishes a "specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the employment decision." ***Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P.***, 444 F.3d 961, 965 (8th Cir. 2006), *quoting* ***Thomas v. First Nat'l Bank of Wynne***, 111 F.3d 64, 66 (8th Cir. 1997); ***Tymon v. Wells Fargo & Co.***, 462 F.3d 925, 933 (8th Cir 2006). Direct evidence includes "evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude, where it is sufficient to support an inference that discriminatory attitude more likely than not was a motivating factor." ***Id.*** at 966.

As direct evidence, Shaffer points to: (1) Raper's initial statement to her that work-related incidents stemming from an affair could impact her employment, (2) Raper's comments during the investigation: "If you hadn't been fooling around with a married man none of this would have happened" and "You know Vicky, if you had just stayed away from Keith none of this would have happened," (3) Raper's conduct

in investigating and obtaining an arrest warrant despite Burnham's desire not to prosecute, and (4) Raper's failure to successfully record and retain the voice message. According to Shaffer, Raper's acts "prove he had no intention of enforcing the law" when arresting her. Shaffer believes that the evidence demonstrates Raper's intent to punish her for being a woman involved with a married man.

Viewed favorably to Shaffer, the evidence is not sufficient to support a finding that gender discrimination was a motivating factor in her arrest. *See Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004). It was Shaffer who initiated the contact with Raper by reporting Burnham's family in the parking lot. It was Burnham, not Raper, who reported the death threat initiating the investigation. Although Shaffer disputes that Raper had probable cause to obtain an arrest warrant, the county attorney advised Raper he had probable cause, and a magistrate judge signed the warrant. Assuming that the arrest could be an adverse employment action, and also that a postal inspector could be a decisionmaker as to an arrest, the prosecutor's opinion and the judge's approval break a specific link between Raper's actions and the arrest.

As for the suspension and termination, it is undisputed that the supervisor, not Raper, suspended and terminated Shaffer. Direct evidence does not include statements by Raper, a nondecisionmaker. *See id.* Beyond alleging that her suspension and termination were discriminatory because her supervisor did not personally interview Raper, Shaffer presents no evidence that her supervisor was motivated by gender bias. "Skeletal allegations unsupported with specific facts or evidence, are insufficient to create a genuine issue of fact so as to preclude summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 530 (8th Cir. 2007). Although Shaffer disputes her supervisor's conclusion, she cites no specific facts or evidence that show the supervisor terminated her for any reason other than threatening to kill a coworker. As Shaffer "lacks evidence that clearly points to the presence of an illegal motive,"

the district court did not err in finding that Shaffer failed to produce direct evidence of gender discrimination. *See **Griffith***, 387 F.3d at 736.

## II.

As for indirect evidence, Shaffer may establish a prima face case of discrimination under the burden-shifting framework of *McDonnel Douglas Corp. v. Green*, 411 U.S. 792 (1973). Shaffer must show (1) she was a member of a protected class, (2) she was qualified for her job, (3) she suffered an adverse employment action, and (4) there are facts that give rise to an inference of gender discrimination. ***Holland v. Sam's Club***, 487 F.3d 641, 644-45 (8th Cir. 2007); ***Rodgers v. U.S. Bank***, 417 F.3d 845, 850 (8th Cir. 2005). The district court found – viewing the evidence most favorably to Shaffer, and even labeling the arrest as a triggering factor in the decision to terminate – Shaffer was unable to show that her arrest or termination occurred under circumstances that allow the court to infer unlawful discrimination.

Shaffer reiterates, as indirect evidence, Raper's statements and comments, and his conduct of the investigation and failure to maintain the voicemail message. The district court found that Raper's initial statement was a warning not to bring her personal problems into the workplace, and did not evidence illegal discrimination. Shaffer argues that the district court erred in not considering this statement in context with Raper's failure to confront Burnham about the affair or to investigate the trespass. Shaffer's repeated assertion that Raper threatened her job at the "No Trespassing" interview in March 2000 is unreasonable given that Raper did nothing against her until Burnham called her in June 2001. The district court found that the evidence did not establish a discriminatory motive. This court agrees.

Shaffer also asserts that Raper "lied" to get the arrest warrant because he did not have a complete copy of the voicemail message and knew that Burnham did not want Shaffer arrested. Although Burnham equivocated on pursuing the case, he initiated the investigation by contacting the Postal Inspection Service and filing a statement against Shaffer. The record is devoid of evidence that Raper failed to successfully

record the message or further investigate in order to punish Shaffer because she was female. The district court did not err in rejecting unreasonable inferences that would require speculation. *Tymon*, 462 F.3d at 934.

Shaffer presents no evidence that the supervisor illegally suspended or terminated her. Shaffer's supervisor interviewed both Shaffer and Burnham. The supervisor found Burnham more credible. The supervisor concluded that Shaffer's suspension/dismissal "was due to the fact that Ms. Shaffer had made threat agains[t] Mr. Burham" and "had Mr. Burham made the same threat he would have been the one getting dismissed."[4] Shaffer presents no evidence showing a discriminatory intent by her supervisor.

Shaffer's touchstone allegation is that she was treated differently than a similarly situated male, Burnham. One way to meet the fourth element of the prima facie burden, is to show that Shaffer and a similarly situated male "were involved in or accused of the same or similar conduct and were disciplined in different ways." *See Turner v. Gonzales*, 421 F.3d 688, 695 (8th Cir. 2005). Shaffer claims that after her termination, Burnham called and left repeated messages on her voicemail, but was not terminated. However, Shaffer never alleges that these messages were threatening, let alone life-threatening. Shaffer fails to present evidence of a similarly situated male who was not terminated for threatening to kill a co-worker. *See Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000).

## III.

The judgment of the district court is affirmed.

_____

---

[4] Shaffer's supervisor – who is not Burnham's supervisor – consistently spells his name "Burham."