OPINION
SMITH, Circuit Judge.
Connie Palfrey appeals from the District Court’s entry of summary judgment against her and in favor of all Defendants. We will affirm.
I.
Because we write only for the benefit of the parties, we presume familiarity with the facts and recite them only briefly. Connie Palfrey was employed as a math teacher for Jefferson-Morgan School District (“JMSD”). She also held the ancillary position of computer coordinator. In April of 1999, Palfrey entered into a three-year employment contract to fill the new full-time position of technology administrator. Her contract was renewed in 2002 for another three-year term. In June of 2005, a majority of the members of the Board of JMSD voted not to renew her contract, and it expired according to its terms in August of that year.
Defendant Charles Rembold was hired by the Board of JMSD to be the Superintendent in August of 2001. At that time it *592 was public knowledge that he was under investigation by the Pennsylvania Ethics Commission. On March 3, 2005, during Rembold’s employment with JMSD, the Ethics Commission contacted him to inform him that he was being investigated a second time. Rembold tendered his resignation to the Board that month, to be effective in August of 2005. In the interim, Rembold worked a greatly reduced schedule and used up his available leave time.
As part of its investigation, the Ethics Commission interviewed several JMSD employees and Board members, including some of the individual Defendants. Palfrey became aware that one of her subordinates was going to deliver the hard drive from Rembold’s computer to the Ethics Commission. Palfrey contacted the Ethics Commission in late March to arrange instead to turn over the hard drive herself. Palfrey was then subpoenaed to testify and did testify before the Ethics Commission in April of 2005.
At a Board meeting in May of 2005, Rembold informed the Board that his office had been broken into and that a document had been stolen. He believed the document was sent to the Ethics Commission. The record contains sufficient facts to establish, for summary judgment purposes, that Rembold informed the Board of his belief that Palfrey was responsible for these acts.
On June 2, 2005, Palfrey received a form letter over the stamped signature of Rem-bold informing her that her contract was being amended and would be available for her review upon completion. At a regularly scheduled Board meeting on June 22, 2005, the Board met in an executive session. Though Rembold was ex officio a non-voting member of the Board, he did not attend this meeting because he was hospitalized at the time. A majority of the Board voted not to renew Palfrey’s contract. Those members who voted in favor of renewing it pressed the other Board members for the reasons for their votes, but none were given. At the Board’s direction, JMSD’s solicitor sent a letter to Palfrey on June 27 informing her that her contract would not be renewed.
Palfrey filed this action in the United States District Court for the Western District of Pennsylvania asserting the following claims: First Amendment retaliation, violation of the Pennsylvania Whistleblower Act, breach of contract, wrongful discharge, and a claim under the Pennsylvania Public Official and Employee Ethics Act. Palfrey withdrew her whistleblower claim, and the District Court granted summary judgment in favor of all Defendants on her First Amendment claim. It then declined to exercise supplemental jurisdiction over the remaining state law claims and dismissed them pursuant to 28 U.S.C. § 1367(c)(3). Thus, only the First Amendment retaliation claim is before us. The District Court had jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291.
II.
We “exercise plenary review over the District Court’s grant of summary judgment and apply the same standard that the District Court should have applied.” Shuman ex rel Shertzer v. Penn Manor Sch. Dist., 422 F.3d 141, 146 (3d Cir.2005) (quotation omitted). Summary judgment is appropriate “if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(c). The facts must be viewed in the light most favorable to the non-moving party and all *593 reasonable inferences from the evidence must be drawn in her favor. Conopco, Inc. v. United States, 572 F.3d 162, 165 (3d Cir.2009).
III.
To succeed on a claim of retaliation for exercising First Amendment rights, a plaintiff must establish that she engaged in protected activity and that the activity was a substantial or motivating factor in any retaliatory action taken against her. Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir.2002). “It is only intuitive that for protected conduct to be a substantial or motivating factor in a decision, the decisionmakers must be aware of the protected conduct.” Id. (citation omitted).
The parties do not dispute that Palfrey’s testimony and conversations with the Ethics Commission constitute activity protected by the First Amendment. However, Palfrey’s accusations that the Board members knew about this activity is a product of her own speculation. She testified that she believed her subordinate informed a Board member of her protected activity and then surmised that the rest of the Board was then so informed. Every Defendant Board member, however, denied having knowledge of her protected activity prior to their decision not to renew her contract. Palfrey only surmises that the Defendant Board members knew of her protected activity and does not rebut these denials. Accordingly, she has failed to offer any evidence on this question.[1]
Palfrey asserts other arguments in an effort to establish a genuine issue of material fact as to whether the Defendants had knowledge of her protected activity. First, they had knowledge of her breaking into Rembold’s office and stealing a document to send to the Ethics Commission. Second, Rembold had knowledge of all her activity, including testifying, and thus the Board had imputed knowledge under the so-called “cat’s paw” theory. Finally, circumstantial evidence, namely temporal proximity, shows knowledge.
First, there is no doubt that Rem-bold was aware—or at least believed—that someone broke into his office and stole a document. We view the record in the same manner as the District Court and hold that the undisputed facts establish that the Board members knew about this and learned that it was Palfrey. However, we are not convinced that breaking into a school superintendent’s locked office to steal a document and send it to the Ethics Commission is activity protected by the First Amendment. As we stated in Ambrose, quoting the District Court’s jury *594 instruction with approval, “unauthorized entry into closed administrative officers [sic] for the purpose of copying records is not activity protected by the First Amendment.” Ambrose, 303 F.3d at 496.
Palfrey next argues that the Court should impute Rembold’s knowledge of her protected activity to the Board. The cat’s paw theory is a method by which a plaintiff can establish liability against a decisionmaker if the decisionmaker, while not himself harboring any discriminatory animus toward the plaintiff, nevertheless is under the control or influence of one who does. See Delli Santi v. CNA Ins. Cos., 88 F.3d 192, 200 & n. 11 (3d Cir.1996). Palfrey cannot succeed on this argument, though, because as discussed by the District Court, she cannot demonstrate that Rembold had knowledge of her protected activity such that it can be imputed to the Board.
Finally, circumstantial evidence of a temporal proximity between protected activity and an adverse employment action is not enough to establish knowledge or even a genuine question of knowledge of the protected activity. To be sure, the Defendant Board members’ denials of their own knowledge alone is not fatal to her case. Ambrose, 303 F.3d at 493. However, Palfrey must come forward with evidence, other than circumstantial evidence consisting of temporal proximity, that the Defendants knew of her testimony and conversations prior to the vote not to renew her contract. Id. at 494. She has not done this.[2]
We conclude that Palfrey has failed to point to a genuine issue of material fact as to whether Defendants knew she engaged in protected activity. The District Court’s conclusion to this effect was correct, and we will affirm.

. Palfrey testified that one of her subordinates had told her that he and another subordinate had advised Board member Burich of her testimony before the Ethics Commission. Palfrey also testified that Board member Pochron had told her that Rembold had told the entire Board at its May meeting that Palfrey had been subpoenaed and "was working with the Ethics Commission to discredit him.” While it is true that hearsay evidence in a deposition submitted in opposition to a motion for summary judgment may be considered if the out-of-court declarant could later present that evidence through direct testimony, i.e., in a form that would be admissible at trial, J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524, 1542 (3d Cir.1990); Williams v. Borough of West Chester, 891 F.2d 458, 466 n. 12 (3d Cir.1989), that proposition does not aid Palfrey here. With respect to Burich, even if the subordinate testified at trial and corroborated Palfrey's deposition testimony, there is no evidence, hearsay or otherwise, that Burich passed the information on to any other Board member. With respect to Pochron, the record affirmatively establishes that he is not in a position to corroborate Palfrey's deposition testimony. He testified at his deposition concerning the May meeting that Rembold spoke only of the breaking and entering of his office.

. We note the following. First, the letter to Palfrey dated June 2, 2005, did not state JMSD’s intent to renew her contract. It only informed her, in a form letter, that her contract was being amended. Second, we do not consider relevant the fact that Defendants do not each set forth the same reason for their individual votes not to renew her contract. Our cases, cited by Palfrey, concluding that inconsistencies in an employer’s articulated reasons are evidence that the reasons were not credible do not shed light on whether the Defendants knew of Palfrey’s protected conduct. Tomasso v. Boeing Co., 445 F.3d 702, 707-10 (3d Cir.2006) (concluding, after the plaintiff established a prima facie case, that various articulated reasons were pretext); Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 190 (3d Cir.2003) (same); Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 331-34 (3d Cir.1995) (same).